OPINION JUDGMENT ENTRY
{¶ 1} This is an appeal from certain interpretations and rulings relative to a separation agreement incorporated into a divorce decree and to the denial of contempt and related issues.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} The parties to this appeal were divorced after a long marriage on October 2, 2002. The Decree, as stated, included a separation agreement executed by the parties.
{¶ 3} The provisions of such agreement applicable to this appeal are:
{¶ 4} "Article 3. Personal Property.
{¶ 5} "D. Other Securities Cash Value
{¶ 6} "2. Husband's IRA. Husband shall cause to be distributed to Wife 50% of this Fidelity IRA account valued as of the date set forth below, after offsetting the value of Wife's IRA. (Said account has a balance of approximately Two Hundred Seventy-Two Thousand Eight Hundred Forty-Eight Dollars ($272,848.00). Husband shall cause such distribution to be made in a manner which enables Wife to elect rollover treatment under the Internal Revenue Code, Section 408(d)(6). Both parties shall cooperate in the preparation and execution of any and all forms necessary to accomplish this distribution as expeditiously as possible, after the termination of their marriage. To the extent that Husband's IRA account contains sub-accounts or a `menu plan', each account shall be divided in such a fashion so as to equalize each party's account value. Each stockholding shall be equally divided so as to equalize diversify holdings. Husband shall roll over all such funds distributed to Wife into her IRA account within the time specified by law or regulation, so as to assure the non-taxable status of the transfers contemplated herein. Prior to such distribution, Husband shall not withdraw, encumber or otherwise reduce the value of the funds in such accounts. The balance of this Husband's Fidelity IRA, after transfer of the amount set forth herein, shall be the property of the Husband, free and clear of any claim of Wife.
{¶ 7} "For purposes of this provision the accounts shall be divided based upon values as of close of business on Friday, September 20, 2002.
{¶ 8} "Securities and Brokerage Accounts (Non-IRA Accounts). The parties are the owners, either jointly or in their individual names, of security/brokerage accounts with Fidelity Investments, those being accounts ending in #6972 and #6964. These accounts shall be equally divided in the manner prescribed by Fidelity Investments which may include, but not be limited to, a non-qualified order. The security/brokerage accounts shall be divided equally and in such a fashion as to equalize the capital gains taxes of each party hereto and to equally diversity their holdings upon the following assumptions: 1) By way of example only, if the parties acquired `blocks' of stock at two different times with different cost basis, said `block' of stock shall be equally divided so as to equalize the tax burden of the parties and equally diversity holdings. Any non-qualified order prepared pursuant to this paragraph shall so provide. It is the intention of the parties, by this provision, to equally divide the security/brokerage accounts in such a fashion so as to equalize any potential tax burden, as if each party were to liquidate their holdings on the same date for the same price; and (2) the division shall be made without consideration of any potential off setting losses.
{¶ 9} "Article 4. Additional Property Settlement. The Wife shall pay to the Husband the sum of Thirty-Five Thousand Dollars ($35,000.00) in certified funds within forty-five (45) days of Wife's receipt of her share of Husband's brokerage account referenced in Article 3, ¶ 6."
{¶ 10} Certain disagreements arose as to payments and compliance with the division of assets under the separation agreement resulting in various motions.
{¶ 11} As to division of assets, the ultimate dispute concerns a division of the Fidelity Brokerage account in Appellant's name as to which Appellee claimed the net sum of $7,405.26.
{¶ 12} After hearing, the court made extensive findings of fact and conclusions of law.
{¶ 13} In addition to finding that it had jurisdiction, the court held:
{¶ 14} "The Court finds that there is ambiguity with regard to Article 3(D)(6). The Court further concludes that it is within the Court's equitable jurisdiction to interpret that provision and eliminate the ambiguity. Based upon the overall content of Article 3(D)(6) it is abundantly clear that the parties intended actual, physical division of the Fidelity brokerage account in such a fashion that it would be absolutely equal. There are no offsets and this is not a provision which would entitle one party to purchase the other party's interest in the account. If there were offsets or the right of purchase, then the Court could well envision that a date certain would be necessary to effectuate the intent of the parties. This is precisely what the Plaintiff testified was her understand [SIC] with regard to the division of the Fidelity IRA accounts contained in Article 3(D)(2). However, a reading of Article (D)(6) clearly leads to the conclusion that the parties contemplated an equal, actual division of these accounts. Indeed, the language of Article 3(D)(6) is so precise as to require blocks of stock be divided equally so as to equalize the capital gains tax implications to either party.
{¶ 15} "The Court concludes that there is no justification for the Defendant's position that he be entitled to a disparate division of the Fidelity brokerage account. It was clearly the intent of the parties to divide this account equally. The Defendant's testimony that, had the account decreased in value, he would have absorbed any loss, lacks credibility. The Court finds it more likely that Defendant assumed Plaintiff would never press her investigation as far as she did and the discrepancy would go unnoticed.
{¶ 16} "The Court recognized that because the accounts in the name of the Defendant, Eddie R. Browning, have already been divided and that there have likely been other transactions in these accounts, the Court concludes that it would be inappropriate to try to reverse these transactions. In this respect, James McLain, CPA, testified that the amount of money necessary to equalize the division of the individual accounts is $7,405.26. Plaintiff has paid to Defendant the entire amount of the property settlement set forth in Article 4 with the exception of the sum of $7,405.26. Due to the foregoing, the court concludes that the property settlement has been paid in full with the Defendant being entitled to keep all of the individual accounts as previously allocated.
{¶ 17} Based upon the testimony of the parties the joint Fidelity broker accounts were reversed and those accounts remain intact. The Court hereby orders that those accounts be divided equally pursuant to Article 3(D)(6) without reference to the September 20, 2002 date."
{¶ 18} The following Assignments of Error are raised:
 ASSIGNMENTS OF ERROR
{¶ 19} "The fairfield county common pleas court domestic relations division committed prejudicial error by exercising jurisdiction and striking from the separation agreement incorporated into the decree of divorce an unambiguous provision which provided a date certain upon which valuation of a joint fidelity brokerage account was to be determined for the purpose of effectuating an equal division of such account.
{¶ 20} "The fairfield county common pleas court domestic relations division committed prejudicial error by effectively striking from the decree an unambiguous provision and substituting a new date for the division.
{¶ 21} "The court abused its discretion and committed prejudicial error by overruling appellant's motions of contempt, lump sum judgment and interest and for attorney's fees and ordering appellant to pay the court costs."
 I, II.
{¶ 22} We shall address the First and Second Assignments of Error jointly as each is predicated upon the premise that the terms of the separation agreement relative to utilization of a specific valuation date were unambiguous. Being clear and not subject to interpretation, it is argued that the court lacked jurisdiction to modify the terms thereof and committed prejudicial error.
{¶ 23} In addition to the finding that an ambiguity existed giving rise to jurisdiction, the court found the Civil Rule 60(B) also provided sufficient authority to arrive at the intended equal division contemplated by the parties. Appellant concedes that, if an ambiguity existed, jurisdiction would lie citingTroha v. Troha, 1995, 105 Ohio App.3d 327.
{¶ 24} The court in such case stated:
{¶ 25} "Clause in separation agreement was ambiguous, and thus subject to interpretation by considering parties' intent as well as equities involved."
{¶ 26} Appellee is correct in stating that under Civil Rule 60(B) the standard is abuse of discretion.
{¶ 27} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
{¶ 28} We therefore determine that the court's conclusion of ambiguity was not an abuse of discretion in viewing the overall language of the agreement particularly as it, in reference to the division, used the words "equalize" and "equally" numerous times and that utilizing the September 20, 2002, date to the detriment of the contemplated equal division easily could be construed as an ambiguous conflict.
{¶ 29} We therefore reject the First and Second Assignments of Error.
 III.
{¶ 30} As this ruling eliminates the consideration of contempt as to the offset in payment by Appellee, we also reject the Third Assignment of Error.
{¶ 31} This cause is affirmed at Appellant's costs.
Boggins, J., Wise, P.J., Edwards, J. concurs.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Common Pleas Court, Lancaster, Ohio, is affirmed. Costs assessed to Appellant.